IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TAMMY E. MILLER,                     )   Civil No.: 1:13-cv-02315-JE
                                     )
       Plaintiff,                )   OPINION AND
                                     )   ORDER
    v.                             )
                                     )
CAROLYN A. COLVIN,                   )
Acting Commissioner of Social Security, )
                                     )
       Defendant.                )
_____      )

    Marlene R. Yesquen
    Black, Chapman, Webber & Stevens
    221 Stewart Avenue, #209
    Medford, OR 97501

        Attorney for Plaintiff


    Billy J. Williams, Acting U.S. Attorney
    Janice E. Hebert, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204

Diana Swisher Andsager
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Tammy Miller brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits or, in the alternative, for further proceedings.

For the reasons set out below, the Commissioner's decision is affirmed.

## **Procedural Background**

Plaintiff protectively filed her application for DIB on February 18, 2010 and her application for SSI on January 19, 2011. Plaintiff alleged she had been disabled since May 1, 2009. The DIB application was denied initially and upon reconsideration and Plaintiff timely filed a request for a hearing. Plaintiff was also granted a hearing on her SSI application. A video hearing was held before Administrative Law Judge John Moreen on June 15, 2012, during which Plaintiff and Vocational Expert (VE) Rheta King testified. At the hearing, Plaintiff amended her alleged onset date to February 18, 2010.

The ALJ issued a decision on August 16, 2012, in which he found Plaintiff not disabled. That decision became the final decision of the Commissioner on November 1, 2013, when the

Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

**Background**

Plaintiff was born in 1980 and was 32 years old at the time the ALJ issued his decision. She earned a GED and has some college education. Plaintiff has past relevant work as a home attendant, child monitor, nursery school attendant, order clerk, paperboard box maker, conveyor feeder-off tearer, and Christmas tree decorator.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## ALJ's Decision

As an initial matter, the ALJ found that Plaintiff last met the requirements for insured status under the Act on September 30, 2011.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended, alleged onset date of February 18, 2010.

At the second step, the ALJ found that Plaintiff had the following severe combination of impairments: bipolar disorder; panic disorder with agoraphobia or generalized anxiety disorder; borderline personality disorder; marijuana abuse, reportedly in remission; polycystic ovarian syndrome; myalgias; history of right trapezius strain and right shoulder bursitis; obesity; history of headaches; and scattering of subchondral sclerosis involving the left sacroiliac joint.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P., App. 1 (20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ next found that Plaintiff's residual functional capacity (RFC) would allow her to perform light exertional level work, except that she is limited to occasional postural activities and simple, routine work involving occasional contact with others and occasional changes in the work setting. He found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment.

Based on the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform any of her past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform "other work" that existed in significant numbers in the national economy. As representative examples of such work, he cited marker, housekeeping cleaner, and advertising material distributor. Based upon that finding, he concluded that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff argues that the ALJ erred because he failed to develop the record concerning Plaintiff's fibromyalgia; improperly rejected the opinion of her treating physician, Dr. Richard Julyan; erroneously evaluated medical evidence; failed to properly consider the combined effects of Plaintiff's multiple impairments; improperly rejected Plaintiff's pain and other subjective symptom testimony; and relied on vocational expert testimony based on a flawed hypothetical.

**I. Development of the Record**

Plaintiff argues that the ALJ failed to develop the record concerning her allegations of fibromyalgia. She contends that the ALJ should have re-contacted Dr. Julyan "for additional information and clarification of his opinion," and also obtained an examination and opinion by a rheumatologist. The Commissioner responds that the ALJ fulfilled his duty to reasonably develop the record and that his Step Two finding that fibromyalgia was not one of Plaintiff's severe impairments was reasonable. The Commissioner also argues that even if the ALJ failed to classify fibromyalgia as a severe impairment, such error was harmless because he adequately accounted for all of Plaintiff's limitations in his RFC finding.

**A. Standards**

The ALJ has a duty to fully and fairly develop the record, and to ensure that a claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.2001). However, an ALJ is required to further develop the record only if the existing evidence is ambiguous, or if the record is inadequate to allow for "proper examination of the evidence." Id. The ALJ can further develop the record, if necessary, by subpoenaing medical records or submitting questions to a claimant's doctors, continuing the hearing, or keeping the record open after a hearing to allow for supplementation of the record. Id. A consultative examination is required only if the medical and

nonmedical record is not sufficient to support a decision or the record includes ambiguities that cannot be resolved based upon information in the records of a claimant's treatment sources. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir.2001); 20 C.F.R. §§ 404.1512(f), 416.912(f).

Social Security Ruling 12-2p designates two separate sets of diagnostic criteria that can establish fibromyalgia as a medically determinable impairment. SSR 12–2p, 2012 WL 3104869, at *2–3 (Jul. 25, 2012). In cases involving fibromyalgia, more than a diagnosis from an acceptable medical source is required. "We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam." Id. Thus, the Social Security Administration will recognize a fibromyalgia diagnosis only when it is supported by an application of the appropriate diagnostic criteria documented in the physician's medical records. Id.

**B. Analysis**

Although SSR 12-2p explains that "[i]n cases involving [fibromyalgia], as in any case, we will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation," this provision does not heighten an ALJ's already existing duty to develop the record nor does it alleviate the claimant's burden to show the existence of medically determinable impairments that have more than a minimal effect on her ability to perform work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). See also Tackett, 180 F.3d at 1099; Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir.2007).

Here, the ALJ agreed to hold the record open for two weeks after Plaintiff's hearing to allow her time to obtain additional records from her treating physician, Dr. Richard Julyan, regarding her alleged fibromyalgia. On June 29, 2012, Plaintiff's counsel requested additional time to submit evidence, explaining that Dr. Julyan's office asked for more time "to look through

their paper file to see where [Dr. Julyan] might have obtained the diagnosis of fibromyalgia." Tr. 338. On July 10, 2012, Plaintiff's counsel informed the ALJ that she had been unable to receive confirmation from Dr. Julyan's office regarding further documentation of a diagnosis for fibromyalgia but that Plaintiff had reported that Dr. Julyan was referring her to a specialist for confirmation of a diagnosis. Tr. 339.

In his August12, 2012 decision, the ALJ noted that a diagnosis of fibromyalgia had yet to be confirmed by a specialist. He noted that his review of the record revealed, "no objective medical evidence that such a diagnosis [of fibromyalgia] would change the outcome of this case." Tr. 22. The ALJ noted that the State Agency medical consultants considered Plaintiff's myalgias to be medically determinable and that Plaintiff's RFC took them into account. The ALJ concluded that he did "not expect that a confirmed diagnosis of fibromyalgia by a specialist would change the outcome of this decision given the lack of any neurological deficits and the claimant's good response to treatment based on the progress notes of record." Tr. 22.

The ALJ held the record open after the hearing in order to give Plaintiff time to supplement it and granted her an extension of time when requested. The evidence of record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. The ALJ's RFC finding that limited Plaintiff to only occasional postural activities and light work adequately accommodated all of her limitations supported by the record. Plaintiff herself has not pointed to any specific limitations that were unaccounted for due to the omission of fibromyalgia as a severe impairment. Under these circumstances, the ALJ was not required to seek further information or to request an additional consultative examination and any error in not including fibromyalgia as one of Plaintiff's severe impairments was harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.2007) (exclusion of a diagnosis from list of severe impairments at step

two is significant only if the impairment caused additional functional limitations not reflected in the ALJ's assessment).

## II. <u>Evaluation of Medical Evidence</u>

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Richard Julyan and, in doing so, improperly substituted his own medical opinions and failed to consider the combined effect of her multiple impairments.

### A. Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir.2008). An ALJ is not required to find a physician's opinion conclusive as to a claimant's physical condition or as to the ultimate question of disability. <u>Morgan v. Commissioner</u>, 169 F.3d 595, 600 (9th Cir.2009). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir.1992).

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761–62 (9th Cir.1989). An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, <u>Lester v. Chater</u>, 81 F.2d 821, 830–31 (9th Cir.1995), and must provide "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting opinions of a treating physician which are controverted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989) (citations omitted).

B.  Analysis

Dr. Richard Julyan began serving as Plaintiff's primary care provider in May 2009.  In a letter dated November 8, 2011, Dr. Julyan wrote that Plaintiff's "[i]ssues such as depression, anxiety, insomnia, myalgias, joint pain and musculoskeletal injuries have been persistent all through my relationship with her" and that "personal stressors" had greatly impacted her. Tr. 944. He indicated that Plaintiff had shown some improvement in some areas but that other areas "such as her anxiety and myalgia pain that is most likely from a disease called fibromyalgia" continued to "plague her greatly." Id. Dr. Julyan opined that "at this time" it would be difficult for Plaintiff to perform many of the duties of regular employment.  He opined that it was necessary that Plaintiff continue her "regimen of medication and physical-behavioral therapies for a time" before he would be able to determine if she could perform the functions of regular employment.

In a Physical Residual Functional Capacity Questionnaire dated May 28, 2012, Dr. Julyan opined that in an 8-hour work day Plaintiff would be limited to less than 2 hours total of standing/walking or sitting, that she would need 15 minute periods of walking every 30 minutes in an 8-hour day, would need to take 15 minute breaks every two hours and would miss more than four days of work per month due to her impairments. Dr. Julyan also opined that Plaintiff would be required to elevate her legs to 90 degrees for all 8 hours of a work day, could rarely stoop, crouch, climb ladders or stairs, look up or down, or turn her head right or left and could only engage in fine manipulation with her fingers or grasping, turning, twisting or reaching for 2 percent of the time in an 8-hour work day.

**1. Dr. Julyan's Opinions**

The ALJ discounted the opinions Dr. Julyan expressed in his letter and RFC Assessment. In one section of her opening memorandum, Plaintiff asserts that the ALJ "did not state clear and convincing nor specific and legitimate reasons supported by substantial evidence." Later, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons. To the extent Plaintiff is contending that the higher standard applies, she provides no argument in support of this contention. Based upon my review of the record, I conclude that because Dr. Julyan's opinions were contradicted by the State Agency medical consultants, the consultative examining psychologist and the State Agency psychological consultants, the ALJ needed only to provide specific and legitimate reasons supported by substantial evidence in the record for discounting his opinions. Magallanes, 881 F.2d at 751. In any event, even assuming the higher standard applied, a careful review of medical record and the ALJ's decision support the conclusion that the ALJ provided legally sufficient reasons for discounting Dr. Julyan's opinions.

The ALJ set out several reasons for giving "less weight" to Dr. Julyan's opinions. He reasoned that Dr. Julyan relied heavily on Plaintiff's subjective complaints which were not entirely credible, that the objective medical evidence and the doctor's own progress notes did not support his opinions, that his progress notes were cursory and that "the relatively routine treatment provided by the doctor is not commensurate with disability or his opinions." Additionally, the ALJ asserted that Dr. Julyan's opinions were conclusory, largely speculative, and were beyond the scope of his medical expertise. Finally, the ALJ noted that Dr. Julyan "admits that some of the claimant's symptoms are a reaction to personal stressors."

Before turning to the ALJ's more convincing reasons, I note that the ALJ's conclusion that Dr. Julyan's opinion should be given less weight as it was "beyond the scope of his medical

expertise," because he "does not specialize in psychiatry, orthopedics, rheumatology, etc." would not, on its own, have provided legally sufficient support for discounting the doctor's opinion. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987)( duly licensed treating physician can practice and render psychiatric services and is competent to give a psychiatric opinion as to the patient's "mental state as it relates to her physical disability").

The ALJ's other reasons for discounting Dr. Julyan's opinion are legally sufficient. Those other reasons include that the objective medical evidence and Dr. Julyan's own progress notes did not support his opinions, that his progress notes were cursory and that the treatment provided was not commensurate with his opinions regarding Plaintiff's level of impairment. A conflict between examination notes and a provider's opinion is an adequate reason to give less weight to the opinion of that provider. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir.2014) (discussing treating physician). An ALJ need not accept the opinion of even a treating physician if that opinion is brief, conclusory or inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also, Meanel v. Apfel, 172 F.3d 1172, 1113–14 (9th Cir.1999)(ALJ may reject conclusory opinions which are inconsistent with balance of record); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.2004)(affirming ALJ's rejection of doctor's opinion because it was brief, unsupported, contradicted by other evidence, and based on subjective complaints).

In his summary of the medical evidence, the ALJ cited progress notes from Dr. Julyan and other providers and noted that claimant's mental status examinations are mostly intact with the exception of demonstrating occasional attention and social limitations upon examination. He observed that progress notes showed Plaintiff's symptoms were exacerbated by difficulties in her relationship with her husband and marijuana use and that Dr. Julyan had opined that some of

Plaintiff's symptoms were in reaction to personal stressors. The ALJ also noted that medical records reflected conservative treatment through medication with "relatively good results" when Plaintiff was compliant with treatment.

With regard to Plaintiff's alleged physical impairments, the ALJ cited to a number of Dr. Julyan's specific treatment notes dated both before and during the relevant time period and observed that the "longitudinal record shows that the claimant usually has relatively normal physical examinations, with no neurological deficits other than some more recent, intermittent clinical signs consistent with carpal tunnel syndrome . . . ." He also noted that the record contained "no objective evidence of any significant and chronic deficits on examination related to myalgias." These observations were not the ALJ's own medical opinions or "speculative inferences," as Plaintiff asserts, but an accurate review and evaluation of the relevant medical evidence contained in the record. See Tommasetti, 533 F.3d at 1041 (ALJ required to consider all medical opinion evidence, and is responsible for resolving conflicts and ambiguities in the medical testimony). Accordingly, I conclude that the ALJ provided clear and convincing reasons supported by substantial evidence in the medical record for discounting the opinions of Dr. Julyan.

Citing Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), Plaintiff argues that it was error for the ALJ to discount Dr. Julyan's opinions based upon their reliance on her subjective complaints because the doctor himself did not disbelieve Plaintiff and there is nothing in the record to indicate that he relied on her descriptions more heavily than his own clinical observations. In Ryan, the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his

ultimate opinion with his own observations." Id. at 1199–1200. However, the court goes on to state that there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms ... more heavily than his own clinical observations." Id. at 1200. Furthermore, the Ninth Circuit has held that an ALJ may reject a treating physician's opinion that is based largely on a claimant's properly discounted self-reports. Tommasetti, 533 F.3d at 1041.

Here, there is no evidence that Dr. Julyan disbelieved Plaintiff's complaints. In addition his treatment notes, although they do contain some observations of Plaintiff's symptoms, are lacking in detail or significant diagnostic testing. Whether Dr. Julyan relied "more heavily" on Plaintiff's self-reports is a close question, particularly in light of the sparsity of detail in his treatment notes.[1] However, even if the ALJ erroneously relied on the Plaintiff's lack of credibility as a basis for giving less weight to Dr. Julyan's opinions, such error was harmless because the ALJ provided other reasons that were legally sufficient. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir.2008) (ALJ's reference to invalid reason for discounting evidence was harmless error given that ultimate determination was supported by valid reasons).

**2. Consideration of "Combined Effects"**

Plaintiff also argues that the ALJ erred by failing to consider the "combined effect of [her] multiple impairments, severe and non-severe . . . ." At Step Two, the ALJ determined that Plaintiff "suffers from the following severe combination of impairments:" bipolar disorder; panic disorder with agoraphobia or generalized anxiety disorder; borderline personality disorder;

---

[1] Ryan is also potentially distinguishable from this case because it dealt specifically with whether the ALJ provided clear and convincing reasons for rejecting an examining physician's opinion. 528 F.3d 1200. Here, although I have concluded that the ALJ met this higher standard, I have also concluded that he need only have given specific and legitimate reasons supported by substantial evidence.

marijuana abuse, reportedly in remission; polycystic ovarian syndrome; myalgias; history of right trapezius strain and right shoulder bursitis; obesity; history of headaches; and scattering of subchondral sclerosis involving the left sacroiliac joint. The ALJ found that these impairments were Plaintiff's only medically determinable impairments.

Plaintiff argues that the ALJ, in improperly rejecting Dr. Julyan's opinion that Plaintiff's physical impairments alone were disabling, failed to evaluate the combined effect of her mental and physical impairments taken together. Plaintiff's argument is unavailing. There is no evidence that the ALJ failed to consider the combined effect of Plaintiff's multiple severe impairments. The ALJ's decision specifically references and discusses his evaluation of Plaintiff's impairments in combination. Tr. 22, 24, 27. Furthermore, as discussed, the ALJ provided legally sufficient reasons for discounting the opinions of Dr. Julyan. Accordingly, the ALJ did not err on this ground.

### III. **Plaintiff's Credibility**

### A. Applicable Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's statements concerning the severity of her symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998) (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1990)(en banc )). If a claimant produces medical evidence of an underlying impairment and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible. Thomas, 278 F.3d at 958–59; SSR 96–

7p. If it is supported by substantial evidence, the ALJ's credibility determination must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle, 533 F.3d at 1162.

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.1993). In addition, SSR 96–7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies or contradictions between the claimant's complaints and her activities of daily living. Thomas, 278 F.3d at 958–59 (9th Cir.2002).

**B. Analysis**

In his decision, the ALJ noted that Plaintiff alleged an inability to work due to body aches, needing to sleep a great deal, having difficulty sitting for a long time, having no strength in her arm, pain and numbness in her arm and hands, insomnia, racing thoughts and difficulty being around people. The ALJ found Plaintiff's statements as to the severity of her impairments less than fully credible. Because there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's credibility. The ALJ fulfilled this requirement.

The ALJ noted the minimal nature of specialty or mental health care Plaintiff received, noting that Plaintiff had discontinued mental health services at one point because she reported she was "too busy" to go. Tr.25. He also noted that she had demonstrated problems complying

with treatment recommendations concerning her marijuana use and mental health care. Tr.25-26. An ALJ may properly discount a Plaintiff's statements where the record reflects "that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p.

The ALJ also pointed to Plaintiff's daily activities, including caring for her daughter and a dog, driving a car, shopping in stores, preparing simple meals, performing some household chores, visiting with others and attending church. He noted that Plaintiff had reported to medical providers that she had performed yard work and had increased her walking and exercise. While Plaintiff is correct that one need not be "utterly incapacitated" to be disabled, the ALJ may discredit a claimant's testimony when the claimant "reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(citations omitted). Evidence of such activity may be grounds for discrediting the claimant's testimony to the extent that it contradicts claims of a totally debilitating impairment. Id.

The ALJ also noted instances where Plaintiff was less than candid, including providing differing reports to treatment providers regarding the reasons why she stopped working and indicating her willingness to lie to avoid interference with the custody of her daughter. Tr. 26-27. This is a clear and convincing reason for finding Plaintiff's statements less then wholly credible. Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012)(claimant's apparent lack of candor is one of the "ordinary techniques of credibility evaluation" upon which an ALJ may rely in evaluating a claimant's credibility).

The ALJ provided specific, clear and convincing reasons for concluding that Plaintiff was not wholly credible and those reasons are supported by substantial evidence in the record. Accordingly, the ALJ's credibility determination should not be set aside here.

## IV. Plaintiff's Other Assertions

In her initial list of assignments of error, Plaintiff asserts that the ALJ's RFC findings and the hypothetical provided to the VE were erroneous. However, Plaintiff does not provide further argument regarding the nature of the error or any resulting prejudice. Therefore her contention may be deemed waived. See, e.g., Carmickle, 533 F.3d at 1161 n. 2 (courts will not consider matters not specifically argued in opening brief). In any event, as discussed above, the ALJ properly discounted the opinions of Dr. Julyan and Plaintiff's subjective complaints of disabling symptoms. Accordingly, he was entitled to rely on VE testimony based on a hypothetical that included only those limitations supported by the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1163–65 (9th Cir.2001)(only limitations supported by substantial evidence must be incorporated into RFC and dispositive hypothetical question posed to VE). Accordingly, there was no error.

## Conclusion

For the reasons set out above, the Commissioner's decision is AFFIRMED and this action is DISMISSED with prejudice.

DATED this 14th day of December, 2015.

    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge